**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**TIMOTHY WEST,**

     **Petitioner,**          **CASE NO. 2:09-cv-93**
                               **JUDGE FROST**
**v.**                      **MAGISTRATE JUDGE KEMP**

**BENNIE KELLEY, Warden,**

     **Respondent.**

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

**FACTS and PROCEDURAL HISTORY**

The Ohio Seventh District Court of Appeals summarized the facts and procedural history of this case as follows:

> Appellant was the live-in boyfriend of Dee Dee McGhee for a period of more than two years starting in 2003. Ms. McGhee lived on Pennsylvania Avenue in Steubenville until the summer of 2004, after which she moved to Wellesly Avenue, also in Steubenville. Also residing with Ms. McGhee were her daughter "B.D.", born 7/26/91, her daughter "A.H.", born 11/10/97, and her son "M.H.", who was six years old at the time of trial. Appellant would sometimes take care of the children when Ms. McGhee was not at home, and generally provided them with adult supervision.
>
> On January 23, 2005, B.D., who was thirteen years old at the

time, wrote a letter to her mother as follows:

"Mom, Okay. Listen. I don't like to talk about it so listen. I don't want to be alone with Timmy [Appellant] because he makes me do nasty stuff with him. I can't take it no more. That's why I'm always acting dumb and always asking if you're leaving. It started at the old house. At first it was just a blow job. Then he started making me do it in my butt. Please don't tell him or any-please don't tell him I told or don't take it to court. I don't like to talk about it." (Tr., pp. 125-126.)

After Ms. McGhee read the letter, she called the police. Officer Joseph Buchmelter conducted an initial interview of the parties at the Wellesly home. It was discovered that there was a currently valid protection order prohibiting Appellant from entering Ms. McGhee's residence on Wellesly Avenue. Appellant was arrested the same day. The case was then referred to Patrolman Shawn Scott, a detective within the Juvenile Division of the police department.

Appellant was indicted in Jefferson County on May 24, 2005, on six counts of rape of B.D., and one count of rape of A.H. The indictment alleged that the rapes occurred between January 1, 2004, and December 31, 2004. The charges were filed pursuant to R.C. 2907.02(A)(1)(b), referring to the rape of a child under thirteen years of age regardless whether the offender knows the age of the child. The charges were all first degree felonies.

On August 10, 2005, the state filed a motion to amend the indictment to include crimes that were committed between August 1, 2003, and January 23, 2005. A hearing was held on the motion on August 29, 2005. The prosecutor argued that the indictment should include more of B.D.'s seventh grade year of school and should continue all the way to the date Appellant was arrested so as to try all possible issues within that relevant time period in one trial. Appellant's counsel responded by saying "Well, Your Honor, and he's right." (8/29/05 Tr., p. 4.) Appellant's counsel was concerned that the earlier dates might expose her client to a further criminal specification and a more severe penalty, but the prosecutor agreed not to add any further specifications to the charges. There was no further

2

discussion about the dates in the amended indictment, and the court granted the motion to amend the indictment.

On September 19, 2005, Appellant filed a motion to sever the charge involving the victim A.H. from the six other counts in the indictment involving B.D. Appellant argued that there would be irrelevant and prejudicial evidence presented in attempting to prove that Appellant had sexually abused B.D.'s sister, A.H. The court granted severance on September 26, 2005, and count two was rescheduled, to be tried separately. Count two is not at issue in this appeal.

A jury trial took place on September 29-30, 2005, dealing only with the counts involving the rape of B.D. B.D. testified that Appellant began sexually abusing her while she was in seventh grade, when she was twelve years old and living in the house on Pennsylvania Avenue. She did not remember the exact day or month of each of the rapes. The first rape occurred after she received poor grades on her report card in the seventh grade. Appellant had previously beaten B.D. with a belt, and had threatened to give her a "whippin" for the bad grades unless she performed oral sex. (Tr., p. 130.) B.D. was in her bedroom at the time. She was told to get on her knees, and Appellant put his penis in her mouth. When she tried to back away because she was choking, he said he was not finished. After he ejaculated, she went to the bathroom and spit in the sink, then brushed her teeth. She did not tell anyone about the rape because she was afraid of what Appellant might do. (Tr., p. 134.)

Appellant ordered her to perform oral sex again a few weeks later, and then again shortly afterward. B.D. estimated that Appellant forced her to perform oral sex approximately 20 times.

At some point in time after these incidents, Appellant wrote B.D. a note saying he was tired of oral sex, which he referred to as doing an "old," and that he wanted to engage in anal intercourse, which he referred to as doing a "new." He drew a picture for B.D. of two people performing oral and anal sex. The first time he forced her to engage in anal sex was in Ms.

McGhee's bedroom. He told her to lie on her stomach on the bed. He placed some type of lubricant on his penis, then inserted it into her anus. B.D. told him it hurt, but he said it was, "either that or the strap." (Tr., p. 140.) B.D. testified that Appellant anally raped her five to ten times.

B.D. also testified that Appellant would not usually ask her directly to engage in oral or anal sex. Instead, he would send notes to her, using her younger brother M.H. as a messenger. (Tr., p. 142.) A note would sometimes say, "let's do an old" or "let's do a new". She would sometimes write a return message on the note, such as, "can we please not do this," and she would call for M.H. to return the note to Appellant.

After an in camera meeting with the trial judge, M.H. was permitted to testify. He testified that "Big Timmy" used to live in his house and would give him notes to deliver to B.D. (Tr., pp. 211ff.) He said that Appellant never asked him to deliver notes to anyone else. He would deliver the note, and wait for B.D. to write a response, then deliver it back to Appellant. He was unable to read the notes himself.

During defense counsel's cross-examination of the victim, she testified that her friend M.F. knew about one of the rapes. M.F. testified that she saw one of the notes that Appellant wrote, knew that B.D. had to go upstairs for a few minutes, and saw B.D. come back downstairs. (Tr., p. 188.) The state later called M.F. as a witness, and she corroborated various aspects of B.D.'s testimony.

Both parties called expert witnesses to testify. The state called Dr. Stephen Mascio. He testified that he examined B.D. on February 4, 2005. He testified that B.D. had no vaginal tears or lacerations, but that she did have a small anal tear. He testified that in his initial report, submitted as part of the discovery phase of the case, he indicated that there were no anal tears, but that he later viewed some photos taken of B.D. and concluded that the photos showed an anal tear. Dr. Mascio's report, his testimony, and the photos were entered into evidence after objection. (Tr., pp. 219ff.) The day after Dr. Mascio testified, Appellant's counsel requested a mistrial based

4

on the theory that Dr. Mascio's testimony contradicted the report he submitted during discovery. The trial court denied the motion for a mistrial.

Appellant called Dr. Lawrence Rosenburg as an expert witness. Dr. Rosenburg noted that there was an anal fissure apparent in the photograph taken by Dr. Mascio, but he concluded that it was a superficial tear and had occurred, at most, ten to fifteen days earlier and not during the time period during which Appellant was alleged to have raped B.D. (Tr., p. 417.)

The state also called Debbie Zirilli, the clerk at Harding Middle School. She testified that once during B.D.'s seventh grade year, on April 27, 2004, she left class during second period and returned during third period. (Tr., p. 269.) No explanation was ever given to the school as to why B.D. left school on that day. She testified that Ms McGhee had filled out an emergency card noting any person permitted to authorize B.D. to leave school. The card for B.D .'s seventh grade year indicated that her "stepfather," living at 1426 Euclid Avenue, was an authorized contact person on the emergency card. Appellant's address at the time was 1426 Euclid Avenue.

Appellant introduced at trial a tape of an interview he had with police on March 30, 2005. Appellant also testified at trial.

Appellant also called Ms McGhee as a witness. She testified that she and Appellant would argue very often. She testified that their relationship ended the night they got into a fight and he beat her. (Tr., p. 449.) She confirmed that Appellant lived in her house for periods of time during their relationship, and that he was in charge of taking care of the children while he was there. (Tr., pp. 444-445.) He was unemployed for part of the time he was with her. When he was employed, he would sometimes work during the day, and sometimes during the night.

The jury found Appellant guilty of all the counts of rape involving the victim B.D. (counts one, three, four, five, six and seven). A joint hearing was held on October 18, 2005, to deal with sentencing and with Appellant's sexual offender

classification. The court sentenced him to ten years of incarceration on each count, to be served consecutively. The court also determined that Appellant was a sexual predator. The judgment entry of sentence was filed on October 26, 2005, and this appeal followed on November 23, 2005.

*State v. West,* 2007 WL 2850092 (Ohio App. 7th Dist. September 24, 2009).  Petitioner raised

the following assignments of error:

1. The defendant's due process rights were violated when he was convicted of six counts of rape under R.C. 2907.02(A)(1)(b), where during the final six months of the time frame alleged in the indictment the victim was not 'less than thirteen years of age,' as required by the statute.

2. The defendant's due process rights were violated when he was convicted of six counts of rape and the state failed to present sufficient evidence of each and every element for each of those six counts.

3. The trial court erred and violated the defendant's due process rights when it permitted the state to offer the testimony of a witness not identified prior to trial.

4. The trial court erred and violated the defendant's due process rights when it permitted the state to offer the testimony of an incompetent witness.

5. The trial court erred and violated the defendant's due process rights when it sentenced him to greater-than-minimum, maximum, and consecutive sentences.

6. The trial court erred by convicting the defendant when the defendant did not receive effective assistance of counsel.

7. The defendant's due process rights were violated by plain error present on the record at trial.

8. The defendant's due process rights were violated by prosecutorial misconduct at trial.

6

9.  The trial court erred by failing to grant the defendant's motion for judgment of acquittal.

10.  The defendant's convictions were against the manifest weight of the evidence at trial.

11.  The defendant's due process rights were violated by the cumulative effect of error at trial.

12.  The trial court erred and violated the defendant's right to due process by finding him to be a sexual predator.

*See id.*  On September 24, 2007, the appellate court sustained petitioner's fifth assignment of error, vacated his sentence, and remanded the case to the trial court for re-sentencing but otherwise affirmed the judgment of the trial court.  *Id.*  Petitioner filed a timely appeal to the Ohio Supreme Court.  He raised the following propositions of law:

1.  A trial court errs by convicting and sentencing a defendant based upon multiple, identical, and undifferentiated counts of a single offense, denying a defendant due process of law and violating the Double Jeopardy Clause.  Fifth and Fourteenth Amendments, United States Constitution; Section 10, Article I, Ohio Constitution.

2.  A trial court errs when it allows testimony to be given, and the admission of evidence, regarding uncharged acts that occurred outside of the scop of the indictment, denying a defendant the right to a fair trial.  Fifth and fourteenth Amendments, United States Constitution; Section 16, Article I, Ohio Constitution.

3.  Trial counsel provides ineffective assistance by failing to raise issues when there is a reasonable probability that the outcome of the trial would have been different, had those issues been raised, Sixth and Fourteenth Amendments, United States Constitution; Section 10, Article I, Ohio Constitution.

*Exhibit 23 to Return of Writ.*  On February 6, 2008, the Ohio Supreme Court dismissed

7

petitioner's appeal.  *State v. West*, 116 Ohio St.3d 1509 (2008).

> On October 15, 2007, the trial court resentenced West again to maximum, consecutive sentences for an aggregate term of imprisonment of sixty years. The court considered the purpose and principles of sentencing and balanced the seriousness and recidivism factors. The court found that the injury was exacerbated by the victim's age and that the victim suffered serious physical and psychological harm. The court also noted that West's relationship with the victim facilitated the offense; that West was the victim's stepfather, and therefore involved a family member; that the offenses were committed in the presence of another child other than the victim; and that West used the threat of punishment to commit the offenses. Lastly, the court observed that West had a history of criminal convictions, had not responded favorably to sanctions previously imposed, showed no genuine remorse, and had not accepted responsibility for his actions.

*State v. West*, 2008 WL 2586754 (Ohio App. 7th Dist. June 25, 2008).  Petitioner filed a timely

appeal, in which he raised the following assignments of error:

> 1.  The trial court denied Mr. West due process of law, by sentencing him to maximum and consecutive terms of imprisonment, in violation of the ex post facto doctrine. Fourteenth Amendment, Article I, Section X, United States Constitution. (October 15, 2007 Transcript, p. 12; October 15, 2007 Judgment Entry of Sentencing, p. 3).
>
> 2.  The trial court erred in sentencing Mr. West to serve consecutive prison terms. Fourteenth Amendment, United States Constitution; Section 16, Article I, Ohio Constitution. (October 15, 2007 Transcript, p. 12; October 15, 2007 Judgment Entry of Sentencing, p. 3).
>
> 3.  Timothy West was deprived of his right to the effective assistance of trial counsel. Sixth and Fourteenth Amendments, United States Constitution; Section 10, Article I, Ohio Constitution. (October 15, 2007 Transcript, pp. 1-12).

*See id.*  On June 25, 2008, the appellate court affirmed the trial court's judgment.  On December 3, 2008, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. West*, 116 Ohio St.3d 1509 (2008).

Petitioner also pursued post conviction relief.

> Appellant Timothy West filed a petition for postconviction relief in the Jefferson County Court of Common Pleas that was denied without a hearing. In Appellant's petition he argued that he received ineffective assistance of trial counsel when he was tried and convicted on six counts of rape of a child under 13 years old. Appellant filed a direct appeal of his conviction and sentence. The conviction was upheld but the matter was remanded for resentencing pursuant to *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. See *State v. West*, 7th Dist. No. 05 JE 57, 2007-Ohio-5240. Appellant was resentenced and once again was given a sixty-year prison term. That sentence was upheld on appeal. *State v. West*, 7th Dist. No. 07-JE-52, 2008-Ohio-3248.

> The trial court acted within its discretion in denying the petition for postconviction relief. Appellant's petition was very narrowly focused on one specific incidence of alleged ineffective assistance. Appellant argued that his trial counsel should have tried more vigorously to obtain discovery of any records that were kept by the Jefferson County Children Services Board (hereinafter "JCCSB") regarding prior allegations of sexual misconduct involving the victim or other minors in the family. Counsel did try to obtain such records during discovery, but no records were found after a search was completed by the prosecutor's office. Appellant contends that his counsel should have demanded an in camera search of the records by the trial judge.

*State v. West*, 2009 WL 1929355 (Ohio App. 7th Dist. June 30, 2009).  On June 30, 2009, the appellate court affirmed the trial court dismissal of petitioner's post conviction petition.  Petitioner did not file an appeal.

On February 5, 2009, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1.  The trial court erred by convicting and sentencing Timothy West based upon multiple, identical, and undifferentiated counts of a single offense, denying Mr. West due process of law and violating the Double Jeopardy Clause.
>
> 2.  The trial court erred when it allowed testimony to be given, and the admission of evidence, regarding acts that occurred outside of the scope of the indictment, denying Mr. West the right to a fair trial under the Fifth and Fourteenth Amendment of the United States Constitution.
>
> 3.  The remedy that the Ohio Supreme Court set forth in *State v. Foster*, 109 Ohio St.3d 1.... (Ohio 2006) violates the ex post facto doctrine and Due Process Clause of the United States Constitution.
>
> 4.  Timothy West's trial counsel provided ineffective assistance by failing to raise issues, at trial and at resentencing, when there is a reasonable probability that the outcome would have been different, had those issues been raised, in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

It is the position of the respondent that petitioner's claims are procedurally defaulted or without merit.

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required

10

fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Hairless*, 459 U.S. 4, 6 (1982) (*per curia); Picardy v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Eagle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice"

analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985).

In claim one, petitioner asserts that he was denied due process and was sentenced in violation of the Double Jeopardy Clause because his convictions were based on "multiple, identical and undifferentiated counts of a single offense." *Petition*, at 14. In claim two, petitioner asserts that he was denied a fair trial by admission of evidence regarding uncharged conduct – *i.e.*, evidence regarding uncharged conduct involving alleged sexual abuse which occurred after B.D.'s thirteenth birthday and when she was living on Wellesley Avenue. *See id.* It is the position of the respondent that these claims are waived for one of two reasons: (1) because petitioner failed to object to the indictment or admission of evidence regarding uncharged acts at trial, or (2) he failed to raise these claims in the Ohio Court of Appeals. *See Return of Writ.*

The Court does not agree with the second basis of respondent's procedural default argument. Although these claims are not spelled out specifically in the language of petitioner's assignments of error, the record reflects that he argued in connection with his first assignment of error that he had been denied adequate notice of the charges against him and the opportunity to defend because the indictment was expanded to include dates beyond the alleged victim's thirteenth birthday, and because evidence regarding acts of sexual abuse committed during this time, with which he was not charged, was admitted at trial. *See Exhibit 17 to Return of Writ.* He specifically referred to *Valentine v. Konteh*, 395 F.3d 626, 632-35 (6th Cir. 2005), *Jackson v. Virginia*, 443 U.S. 307 (1979)(addressing

insufficiency of the evidence), and *White v. McAninch*, 235 F.3d 988, 997 (6th Cir. 2000), in support of his claims.  *See id.* Additionally, in support of his claim of insufficiency of the evidence, petitioner argued that evidence submitted at trial was "too nonspecific" to support his convictions, as he "was unable to separately identify and defend against any of those specific incidents."  He again referred to *Valentine v. Konteh, supra*, in support of this claim.  *See id.*, at 14.

In *White v. McAninch,* the United States Court of Appeals for the Sixth Circuit affirmed the conditional grant of a writ of habeas corpus on the basis of ineffective assistance of counsel where defense counsel elicited from prosecution witnesses testimony regarding an uncharged act of sexual intercourse between the alleged victim and the defendant, and failed adequately to prepare for trial.  *Id.*, at 997-998.  This citation therefore should have alerted the state court of appeals of this particular federal claim.  In *Valentine v. Konteh,*

> Valentine was convicted of 20 "carbon-copy" counts of child rape, each of which was identically worded so that there was no differentiation among the charges and 20 counts of felonious sexual penetration, each of which was also identically worded. The prosecution did not distinguish the factual bases of these charges in the indictment, in the bill of particulars, or even at trial. The only evidence as to the number of offenses was provided by the testimony of the child victim, who described typical abuse scenarios and estimated the number of times the abusive offenses occurred, e.g., "about 20," "about 15" or "about 10" times. The District Court issued the writ of habeas corpus with respect to all counts on the ground that the indictment and conviction violated Valentine's federal due process rights to notice of the crime charged with sufficient specificity so that he would not again be put in jeopardy of the

same crime.

*Valentine v. Konteh*, 395 F.3d at 628.  The Court of Appeals also affirmed the grant of a writ in that case, although it did uphold the petitioner's conviction on one count of  child rape and one count of felonious sexual penetration.  It set aside the remainder of the convictions, concluding that although the petitioner

> had notice that he was charged with the two separate crimes during the period of time specified in the indictment ... he had no way to otherwise identify what he was to defend against in the repetitive counts and no way to determine what charges of a similar nature could be brought against him in the future if he were re-indicted. Thus, we regard the 20 child rape counts as charging one crime and the 20 penetration counts as charging another single crime.

*Id.*, at 628-629.  Although the indictment in *Valentine* adequately set forth the elements of the offenses charged, the Court of Appeals held that, under the particular facts of that case, the use of "multiple, undifferentiated charges violated Valentine's right to notice of the charges against him and his right to be protected from double jeopardy."  *Id.*, at 631.

In view of the foregoing, and particularly petitioner's repeated reference to *Valentine* in presenting his claims to the state courts, this Court concludes that petitioner fairly presented to the state court of appeals his claim that he was denied constitutionally adequate notice of the charges against him and a fair trial due to improper admission of uncharged acts, and that he was improperly convicted on undifferentiated charges in violation of the Double Jeopardy Clause as discussed in *Valentine*.

That said, the Court must next consider whether petitioner nonetheless waived his

14

right to present claims one and two in these federal habeas corpus proceedings due to his failure to raise any objection based on these principles at trial, or because he had invited the error of which he complains.  The state appellate court concluded that he did, and rejected his claims as follows:

> Appellant... challenges the form of the indictment. Appellant states that the indictment charges him with crimes committed while the victim was less than thirteen years old, but also sets forth a range of dates for the crimes that goes beyond the child's thirteenth birthday. The indictment alleged that the crimes occurred between August 1, 2003, and September 22, 2005. B.D.'s [sic] was born on July 26, 1991; she turned thirteen on July 26, 2004. Therefore, Appellant is correct that, at least theoretically, the indictment also includes a period of time where a charge of raping a child under the age of thirteen might not apply. Appellant does not only challenge the indictment under this assignment. He contends that the proof at trial and the jury instructions also referred to the time period after the victim's thirteenth birthday. Appellant contends that the proof at trial was so vague and generalized the state could not establish that all the rapes occurred before B.D.'s thirteenth birthday. Here, the record does not support Appellant's contentions.
>
> Appellant's primary argument is twofold. First, he raises a technical argument that the indictment is inconsistent because it covers a time period that was both before and after the victim's thirteenth birthday, even though he was charged with raping a child who was under the age of thirteen. Appellant fully acknowledges that the range of dates in the indictment extends almost a year prior to the victim's thirteen birthday, and thus, includes a wide range of dates that would encompass one of the elements of the crime. Appellant simply states that the indictment was invalid because it also included dates beyond the victim's thirteenth birthday. Appellant presents no caselaw to support his contention that an overly broad range of dates in an indictment can nullify a jury verdict. Generally speaking, an indictment does not even need to include the date

15

or range of dates of the alleged crime: "Pursuant to R.C. 2941.05, an indictment generally is sufficient if it contains, in substance, a statement that the accused has committed some public offense therein specified. *See, also,* R.C. 2945.83(A); Crim.R. 7(B). The General Assembly, in declaring what shall be sufficient in an indictment, provided, among other things, that it shall be sufficient if it can be understood that the offense was committed at some time prior to the time of the filing of the indictment." *State v. Sellards* (1985), 17 Ohio St .3d 169, 170-171, 478 N.E.2d 781. R.C. 2941.08(A) specifically states that an indictment is not invalid because it contains surplus information, which in this case would be a surplus range of dates.

We note that objections to defects in the indictment must be made before trial. Crim.R. 12(C)(2). It is clear that Appellant's attorney did not object at trial to the dates in the final amended indictment, and in fact, agreed with the terms of the indictment. A hearing was held on August 29, 2005, on the prosecutor's request to amend the indictment to include crimes committed between August 1, 2003, and January 23, 2005. Appellant's attorney accepted this range of dates, and agreed that it would be better to have the indictment include as wide a range of dates as possible to dispose of as many potential charges as possible in one trial. (8/29/05 Tr., p. 4.) Counsel's only concern at that hearing was whether the earlier date would expose Appellant to a more severe statutory specification that might enhance the penalty, but the prosecutor agreed not to add any further specifications to the charge and not to expose Appellant to more severe penalties. (8/29/05 Tr., p. 5.) There was no discussion about any error in the January 23, 2005, date, even though that date fell beyond the victim's thirteenth birthday. Appellant's counsel not only failed to object to the amended indictment, but also actively encouraged the court to allow the indictment to be amended. It is clear that counsel attempted to gain a benefit for Appellant by preventing the prosecutor from bringing any future charges for crimes committed within the range of amended dates, even if those dates fell after B.D.'s thirteenth birthday.

Under the doctrine of invited error, a party is not entitled to

16

take advantage of an error that he himself invited or induced. *Lester v. Leuck* (1943), 142 Ohio St. 91, 26 O.O. 280, 50 N.E.2d 145, paragraph one of the syllabus; *State v. Bey* (1999), 85 Ohio St.3d 487, 492-493, 709 N.E.2d 484. Furthermore, the rule of invited error prohibits a party who induces error in the trial court from taking advantage of the error on appeal. *State v. Woodruff* (1983), 10 Ohio App.3d 326, 327, 10 OBR 532, 462 N.E.2d 457. The record is clear that the indictment includes a large potential range of dates under which it was possible for Appellant to be convicted of one or more charges of rape of a child under the age of thirteen, and that Appellant's counsel encouraged the trial court to amend the indictment to include a wide range of dates. Therefore, there is no reversible error based on the dates contained in the indictment.

Appellant next argues that the evidence presented at trial did not actually establish that any rape occurred while the victim was under the age of thirteen. Appellee, though, cites numerous portions of the record establishing that at least six acts of rape occurred while the victim was less than thirteen. B.D.'s thirteenth birthday was July 26, 2004. She testified that she was twelve when she was in the seventh grade. (Tr., pp. 122, 129.) She testified that Appellant used to beat her with a belt, but he told her he would not beat her for the poor grades on her seventh grade report card if she performed oral sex on him. (Tr., pp. 130-131.) He forced her to perform oral sex again a few weeks later. (Tr., p. 134 .) B.D. testified that she was forced to perform oral sex again a few weeks later, while she was still in the seventh grade. (Tr., p. 135.) B.D. testified that this occurred a fourth, fifth and sixth time, and that she could remember as many as 20 occurrences during the seventh grade. (Tr., pp. 134-135.) These rapes first occurred in B.D.'s bedroom in her family home on Pennsylvania Avenue in Steubenville. B.D.'s family did not move from this house until the summer between her seventh and eighth grade years in school. Obviously, if B.D. was twelve years old in the seventh grade, and all these rapes happened while she was in the seventh grade at the house in which she lived while she was in seventh grade, then they occurred while she was less than thirteen years old.

Appellant also anally raped B.D. many times. He told her that oral sex was "getting old" and he wanted something new. (Tr., p. 136.) This also occurred during her seventh grade year, at her family's house on Pennsylvania Avenue, while she was twelve years old. (Tr., pp. 138-141, 266.)

Another specific incident occurred while B.D. was at school in the seventh grade. Appellant called the school during the second period of the day. The school released B.D., she went home and had oral sex with Appellant, and then returned to school during third period. (Tr., p. 151.)

The argument on appeal is that the evidence is too vague to support six convictions for rape. The record reflects that B.D. gave very specific testimony about many of the times she was raped. B.D. described how the rapes were used as an alternative to being beaten with a belt. She described Appellant's penis as big, light-skinned and thick. (Tr., p. 132.) She described a particular scar on Appellant's arm, and that he has no tattoos or scars on his body between his chest and his knees. She knew that Appellant had no body piercings. She described how she was forced to get on her knees and move her mouth up and down during oral sex, and that Appellant ejaculated each time. She described that she would brush her teeth each time after oral sex.

She described Appellant's method of referring to oral sex as "old" and anal sex as "new," and that he would use these words to request which type of sex he wanted. She described the pain of anal sex, and how she had to kneel at the edge of the bed while Appellant stood behind her. She explained that she would have to go to the toilet after anal sex, and that she would expel feces and blood.

She described the notes Appellant would write requesting sex, and that he would give these notes to her five-year old brother M.H. to deliver to her. The existence of these notes was corroborated by her brother and by her girlfriend M.F. M.F. was present when B.D. received one such note, and saw B.D. go upstairs with Appellant and return after 15 minutes. M.F. realized that B.D. was very upset when she came back

18

downstairs, and that B.D. was brushing her teeth. B.D.'s mother was not at home during these incidents. These and many more detailed facts were revealed at trial.

Obviously the record does not establish the exact dates of each of these rapes, except for the day that B.D. was taken out of school. As Appellee correctly points out, however, such specificity of dates is not a necessary part of a rape indictment or an essential element of the crime:

" 'We note that these particular cases often make it more difficult to ascertain specific dates. The victims are young children who may reasonably be unable to remember exact times and dates of psychologically traumatic sexual abuses. This is especially true where the crimes involve several instances of abuse spread out over an extended period of time. *State v. Humfleet* (Sept. 9, 1985), Clermont App. No. CA84-04-031, unreported, at 15, 1985 WL 7728. * * * An allowance for reasonableness and inexactitude must be made for such cases considering the circumstances.' [ *State v.] Robinette* [ (Feb. 27, 1987), 5th Dist. No. CA-652], at 7-8. *See, also, State v. D.B.S.* [ (1985), 216 Mont. 234], 700 P.2d 630, 634 (young children are not 'governed by the clock and calendar as adults are' and allowances must be made for the inexactitude of children's memories, or else the defendant becomes virtually immune from prosecution)." *State v. Barnecut* (1988), 44 Ohio App.3d 149, 151-152, 542 N.E.2d 353.

As part of this assignment of error, Appellant also offers somewhat random additional arguments. Appellant objects to the relevance of the testimony of Dr. Mascio. The doctor testified that on February 4, 2005, B.D. had an "anal tear" at the 6 o'clock position. (Tr., p. 221.) He stated that this tear was consistent with anal sex. (Tr., p. 232.) Dr. Mascio did not state any time frame in which he thought anal sex might have occurred to cause the anal tear. Appellant presented his own expert, Dr. Rosenburg, who confirmed that an anal tear at the 6 o'clock position was more likely produced by sexual penetration than those tears at other positions. (Tr., p. 435.) Dr. Rosenburg, though, did not believe the tear occurred during the period that Appellant was alleged to have raped B.D.

Dr. Mascio's original report did not mention an anal tear, but he testified that when he received magnified photos a week or two later, he noticed the tear. (Tr., p. 223.) Thus, his testimony at trial, in contrast to the report he submitted, was that there was an anal tear and that such a tear was consistent with anal sex.

The doctor's testimony is certainly relevant to a charge of rape of a child under the age of thirteen, even if it does not present a complete picture of when the rape occurred. That Dr. Rosenburg disagreed with some of Dr. Mascio's analysis was a matter for the jury to evaluate.
***

Appellant's counsel was specifically asked if there were any objections to allowing Dr. Mascio's report and the photographs to be entered into evidence, and there were no objections. There were no objections to his testimony about the anal tear. It was only later in trial that counsel requested a mistrial based on Dr. Mascio's testimony.

Counsel either waived any objection to the evidence about the anal tear, or is culpable in creating the conditions for which he sought a mistrial by allowing all the testimony and evidence to be presented to the jury before raising any objections. If a timely objection had been made, the trial court could have fashioned an appropriate response, such as granting a continuance or even excluding the evidence from trial. Crim.R. 16(E)(3).

***

Appellant also claims that he was convicted of uncharged crimes because there was proof of more than six counts of rape presented at trial. This obviously contradicts Appellant's other arguments where he seeks to establish that no counts of rape were proven at trial. This argument is unpersuasive. It is clear from the record that Appellant could possibly have been charged with many more than six counts of rape, and the evidence presented at trial would have supported more than six convictions. Appellant appears to argue that it was

reversible error for the prosecutor to undercharge him. It is within the discretion of the prosecutor to decide what charges to file and pursue in a criminal case, and if the prosecutor determined that six counts of rape could be sustained at trial, that decision is generally not open to judicial review. *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 364, 98 S.Ct. 663, 54 L Ed.2d 604; *State ex rel. Evans v. Columbus Dept. of Law* (1998), 83 Ohio St.3d 174, 175, 699 N.E.2d 60.

That the evidence could also have served to convict Appellant of other or additional crimes is irrelevant and is purely speculative on Appellant's part. The prosecutor was called upon to present as much evidence as was needed to convict Appellant of the six crimes for which he was charged. The parties also agreed that any rape crimes committed between August 1, 2003, and January 23, 2005, were properly subject to the trial, apparently so that Appellant could not be tried again for any related crimes that may have occurred in that time frame. Appellant's counsel may have gained an advantage by agreeing to include a range of dates in the indictment that went beyond B.D.'s thirteenth birthday. Although he could only be convicted for events that occurred before B.D.'s thirteenth birthday, it is unlikely that he could be retried for similar or related crimes that occurred within the full time span of the indictment. Counsel may also have been anticipating a Crim.R. 11 plea agreement based on the actual unfolding of events at trial. In any event, Appellant's counsel agreed that Appellant would be tried for all rape charges against B.D. that might have occurred within the dates set forth in the indictment, and Appellant cannot now assert reversible error based on the trial court's and the prosecutor's reliance on those dates, so long as the convictions were based on the evidence of criminal events which occurred before the victim turned thirteen.

Appellant is most concerned about any evidence of crimes that occurred after B.D.'s thirteenth birthday, since the rape charges were limited to rape of a child under thirteen years old. It is permissible, though, for evidence of uncharged crimes to be introduced at trial to prove, "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). One aspect of the prosecution's

case was to establish the overall plan involved in Appellant's process of raping B.D., involving code words, written notes, specific locations where the crimes would occur, and other repetitive aspects of the criminal course of conduct. In order to establish this criminal plan, the prosecution referred to events both before and after B.D.'s thirteenth birthday, even though one of the elements of the charged crime was that Appellant committed the rapes prior to B.D.'s thirteenth birthday. Other "bad acts" evidence may be admitted for the above-mentioned purposes even if the acts occurred after the date of the charged crime. *State v. McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 85. Although Appellant objected to some attempts by the prosecution to use evidence of prior uncharged crimes, there was never any objection to the prosecution's reliance on subsequent uncharged criminal acts. Evid.R. 404(B) provides yet another reason why the prosecutor would have been permitted to present evidence of crimes occurring after B.D.'s thirteenth birthday even though the charged crimes involved the rape of a child under age thirteen. In any event, it is readily apparent from the record that there were at least six instances of rape of a child under thirteen proven at trial, supporting in full the conviction, here

None of Appellant's arguments in this very broad assignment of error have any merit, and it is overruled.

*State v. West, supra*, 2007 WL 2850092.

In view of the foregoing, this Court concludes that petitioner waived his claim under *Valentine* as well as his claim that the indictment improperly included dates where he had not been charged with sexual abuse by failing to object, and by "inviting the error... actively encourag[ing] the court to allow the indictment to be amended." *State v. West, supra*.[1] He

---

[1]  In rejecting petitioner's claim of insufficiency of the evidence, the state appellate court refused to again address petitioner's arguments made in claims one and two of this habeas corpus petition:

As these arguments have already been addressed, they will not

be repeated here. Appellant has conceded that there was some general testimony that he engaged in oral sex with the victim, but he contends that the evidence did not refer to any specific time or date that each rape occurred. Hence, he claims the evidence was not specific enough to support even one conviction for rape. As we earlier stated, the evidence in this case is very specific and is more than sufficient to support the convictions.

***

We agree with Appellee that the state proved at least six counts of rape while B.D. was still in seventh grade, meaning that she was under thirteen years old at the time of each rape. B.D. described a series of six separate rapes in the form of oral sex, and also described at least three specific instances of anal sex. A conviction for rape of a child may be upheld primarily on the basis of the victim's testimony, particularly when there is some corroborating evidence. See, e.g., *State v. Hines,* 6th Dist. No. L-04-1234, 2006-Ohio-322; *State v. Hudson,* 5th Dist. No. 02 CAA 12065, 2003-Ohio-7049. We have reviewed the victim's testimony and determined that it supports the six convictions for rape. Corroborating evidence exists in this case. There was testimony about the notes that passed between Appellant and the victim. There was evidence that the victim left her second period class at school for part of the day, supposedly for a doctor's appointment when there was no such appointment, and then returned to school during third period. This time span corresponded with one of the acts of rape described by the victim. There was also character evidence presented, including evidence of Appellant's domestic violence convictions against the victim's mother, and against A.H. The primary evidence, though, was from the victim. As already discussed, her testimony was filled with personal details about Appellant and about many separate instances of rape. The record fully supports the verdict in this case, and these three assignments of error are without merit.

*State v. West, supra,* 2007 WL 2850092.  This Court is not persuaded by respondent's

23

likewise has waived his claim that evidence improperly was admitted regarding crimes that took place for which he was not charged by failing to object and by agreeing, prior to trial, that he "would be tried for all rape charges against B.D. that might have occurred within the dates set forth in the indictment[.]" *State v. West, supra.*

The United States Court of Appeals has held that Ohio's contemporaneous objection rule constitutes an adequate and independent ground to preclude federal habeas review. *See Scott v. Mitchell,* 209 F.3d 854, 869-70 (6th Cir. 2000); *Keith v. Mitchell,* 455 F.3d 662, 673-74 (6th Cir. 2006). Further, "[w]hen a criminal defendant invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error." *Randolph v. Wolfenbarger,* 2006 WL 1662885 (E.D. Michigan June 12, 2006), citing *Fields v. Bagley,* 275 F.3d 478, 485-86 (6th Cir. 2001); *Draughn v. Jabe,* 803 F.Supp. 70, 75 (E.D. Michigan 1992)(same), citing *Leverett v. Spears,* 877 F.2d 921, 924 (11th Cir. 1989).

Petitioner may still obtain review of these claims on the merits, if he establishes cause for his procedural default, as well as actual prejudice from the constitutional violation that he alleges. *Murray v. Carrier, supra.*

As cause for his procedural default, and in claim four of this federal habeas corpus petition, petitioner asserts the ineffective assistance of counsel. The state appellate court rejected this claim as follows:

> Appellant alleges that his trial counsel was ineffective for ... different reasons. To prevail on a claim of ineffective assistance

---

contention that the state appellate court thereby failed to consider his claims, thus warranting a de novo review in these proceedings. *See Traverse.*

of counsel, the defendant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; accord *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. In order to show deficient performance, a defendant must prove that his counsel's performance fell below an objective level of reasonable representation. *Bradley* at 142. To show prejudice, a defendant must show a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. *Id*. at 143. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686.

The Ohio Supreme Court, in *State v. Lytle* (1976), 48 Ohio St.2d 391, 358 N.E.2d 623, devised a similar test: "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next * * * there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *Id*. at 396-397. *See also, State v. Brooks* (1986), 25 Ohio St.3d 144, 495 N.E.2d 407.

Judicial scrutiny of trial counsel's decisions, acts, and tactics is a highly deferential review. *State v. Roberts* (2000), 139 Ohio App.3d 757, 771, 745 N.E.2d 1057.

Appellant first alleges that counsel was ineffective because he did not object to evidence that was outside the range of possible dates for the charged crime. Appellant contends that his counsel allowed evidence to be admitted relating to uncharged acts. As already discussed under assignment of error number one, the indictment included a range of dates that went beyond the victim's thirteenth birthday, and both parties agreed to this in order to dispose of and resolve all possible criminal charges in one trial. Appellant discusses one portion in the trial transcript that supposedly refers to

25

uncharged sexual crimes, but this portion of the record appears to deal with an incident that occurred when the victim was in seventh grade and was still twelve years old. Hence, it would fall into the category of the charged crimes. (Tr., pp. 153-155.) Appellant does not specifically raise any other evidence that supposedly deals with uncharged crimes, but again, it is clear from the record that the precise dates of Appellant's crimes were in question and that the state needed to reconstruct the entire course of events before and after the victim's thirteenth birthday in order to prove that at least six crimes were committed before she reached thirteen years of age.

\*\*\*

Appellant argues that counsel should have objected to the form of the indictment because it did not differentiate between the various rape allegations, and because the time period in the indictment extended beyond the victim's thirteenth birthday. As earlier discussed, the specific date of a crime is generally not one of the essential elements of the crime and is not a necessary part of the indictment. Counsel would not have been ineffective for failing to make a futile objection to the indictment. *State v. Girts* (1997), 121 Ohio App.3d 539, 560, 700 N.E.2d 395.

\*\*\*

Based on Appellant's failure to actually establish that counsel was ineffective, or certainly that he was prejudiced by the various decisions and actions of his counsel at trial, this assignment of error is overruled.

*State v. West, supra*, 2007 WL 2850092.

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. §2254(e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue

26

> made by a State court shall be presumed to be correct. The
> applicant shall have the burden of rebutting the presumption
> of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was

contrary to or an unreasonable application of clearly established federal law, or based on

an unreasonable determination of the facts in light of the evidence that was presented.  28

U.S.C. §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the
> adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

The United States District Court for the Western District of Michigan has summarized this

standard as follows:

> [A] decision of the state court is "contrary to" such clearly
> established federal law "if the state court arrives at a
> conclusion opposite to that reached by this Court on a question
> of law or if the state court decides a case differently than this
> Court has on a set of materially indistinguishable facts." *Id*. at
> 413. A state court decision will be deemed an "unreasonable
> application" of clearly established federal law "if the state
> court identifies the correct governing legal principle from this
> Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case." *Id.* A federal habeas court may not
> find a state court's adjudication to be "unreasonable" "simply

27

> because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Further, the federal habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.*

*Williams v. Lavigne*, 2006 WL 2524220 (W.D. Michigan August 30, 2006), citing *Williams v. Taylor*, 529 U.S. 362 (2000).  Petitioner has failed to meet this standard here.

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694.

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 697. Because the petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland*, 466 U.S. at 697.

Prior to trial, defense counsel agreed to the prosecutor's request to amend the indictment to widen the dates of the alleged incidents so that petitioner would not later be charged with additional allegations of sexual abuse that took place before or after the alleged victim turned thirteen. *See Transcript,* August 29, 2005. Further, defense counsel's decision not to object to amendment of the indictment does not appear to have been unreasonable. As discussed by the state appellate court, amendment of the indictment to expand the dates of the sexual crimes alleged is permitted under Ohio law, and an objection on this basis therefore likely would have been overruled. Further, petitioner did not present an alibi or any other defense that rested on the precise dates and times of the alleged offenses. Rather, he argued that the conduct alleged never took place. *See, e.g. Trial Transcript,* at 115-119; *Shafer v. Wilson,* unpublished, 2007 WL 315760 (N.D. Ohio January 30, 2007)(no prejudice under *Strickland* for failure to object to amendment of indictment in sexual abuse case to expand dates of alleged crimes.)

> The time of an offense is not an essential element that needs to be proven by the prosecution, but the time of the crime may implicate due process concerns, such as whether a late amendment to an information deprives a defendant of adequate notice of the charge or denies him an opportunity to present a defense. See *Scott v. Roberts,* 777 F.Supp. 897, 900 (D.Kan.1991).

* * *

[S]everal courts have rejected ... claims that a state court information was fatally defective because it failed to allege a precise date or dates that a sexual assault against a child victim occurred. In *Fawcett v. Bablitch,* 962 F.2d 617, 618-19 (7th Cir .1992), the United States Court of Appeals for the Seventh Circuit held that a criminal information which alleged that the habeas petitioner's sexual contact with the minor victim occurred over a six month period gave the petitioner sufficient notice to defend the charges against him. The Seventh Circuit acknowledged the difficulty of providing an alibi for a lengthy period of time, but reasoned that the allegations contained in the information were sufficient for the petitioner to challenge the child victim's veracity and memory, and the petitioner could also deny committing the offenses. *Id.*

In *Brodit v. Cambra,* 350 F.3d 985, 988-89 (9th Cir.2003), the United States Court of Appeals for the Ninth Circuit held that a California law which allowed a prosecutor to charge a habeas petitioner with three or more acts of child sexual abuse on unspecified dates between June 12, 1992 and December 31, 1994 did not deprive him of notice and a fair opportunity to respond to the state's charges in violation of due process. The Ninth Circuit cited to *People v. Jones,* 51 Cal.3d 294, 270 Cal.Rptr. 611, 792 P.2d 643 (Cal.1990), in which the California Supreme Court observed that a defendant could prepare an adequate defense even though child sexual abuse allegations spanning a lengthy period of time could preclude an alibi defense. The California Supreme Court "reasoned that credibility is typically the major issue in child abuse cases, with most defendants denying not just specific incidents on specific dates, but denying that any abuse ever occurred at all." *Brodit,* 350 F.3d at 988 (citing *Jones,* 51 Cal.3d at 319, 270 Cal.Rptr. 611, 792 P.2d 643). The Ninth Circuit further noted that defendants "can take advantage of a variety of effective defenses even in the absence of specific dates; for example, they can testify and deny the allegations, advance positive character evidence, develop evidence of a child's motive to lie, and show alibis for some incidents that, if credible, could cast doubt on the child's entire account." *Id.* at 988-89, 270 Cal.Rptr. 611, 792 P.2d 643

30

(citing *Jones,* 51 Cal.3d at 320, 270 Cal.Rptr. 611, 792 P.2d 643).

*Turner v. Romanowski,* 2007 WL 496672 (E.D. Michigan February 13, 2007).  Moreover, upon review of the record, this Court is not persuaded by petitioner's argument that the circumstances in this case are analogous to those in *Valentine* or *White v. McAninch, supra.*

As discussed above, one of the issued addressed in *Valentine* was the lack of specificity in both the indictment, as well as evidence submitted at trial, concerning the factual basis for the offenses charged.  *Id.,* at 635.  The Court of Appeals noted:

> If Valentine had been acquitted of the[] 40 charges, it is unclear what limitations would have been imposed on his re-indictment. Would double jeopardy preclude any prosecution concerning the abuse of this child victim, the abuse of this victim during the stated time period, the abuse of this victim at their residence, the stated sexual offenses in the indictment, the offenses offered into evidence at trial, or some group of forty specific offenses? We cannot be sure what double jeopardy would prohibit because we cannot be sure what factual incidents were presented and decided by this jury. If Valentine had been found not guilty, it is not clear to what extent he could ably assert that his acquittal barred prosecution for other similar incidents.
>
> ***
>
> As the charges were not linked to differentiated incidents, there is resulting uncertainty as to what the trial jury actually found.... Due process requires that criminal charges be specific enough to protect defendants from this danger of double jeopardy. The multiple, identically worded counts deprived Valentine of this protection.
>
> ***
>
> Importantly, the constitutional error in this case is traceable not to the generic language of the individual counts of the

31

> indictment but to the fact that there was no differentiation among the counts. The exigencies of child abuse cases necessitate considerable latitude in the construction of criminal charges. The prosecutors in this case, however, abused this wide latitude by piling on multiple identical counts. Numerous charges cannot be made out through estimation or inference. Instead, if prosecutors seek multiple charges against a defendant, they must link those multiple charges to multiple identifiable offenses. Due process requires this minimal step. Courts cannot uphold multiple convictions when they are unable to discern the evidence that supports each individual conviction.

*Id.*, at 635-637.  However, the Sixth Circuit also held that any due process issues raised by multiple undifferentiated charges on the same offense "might have been cured had ... the prosecution delineate[d] the factual bases for the forty separate incidents either before or during the trial." *Valentine v. Konteh, supra*, 395 F.3d at 634.  That is what distinguished this case from *Valentine* - or, at least, it is a difference that sufficiently explains why petitioner's trial counsel may not have performed ineffectively by failing to raise this claim at trial, and why the state court's determination that counsel was not ineffective for failing to do so is not an unreasonable resolution of that question.

As discussed by the Ohio Court of Appeals, evidence submitted at trial detailed with sufficient specificity the alleged acts referred to.  B.D. testified that the first incident occurred when she was in the seventh grade, after she brought home a bad report card. Petitioner told her if she got on her knees and did what he said, she should not "get a whippin." *Trial Transcript*, at 130-131.  She complied with his request for oral sex.  It took place in her bedroom.  He sat on her bed, she was on the floor.  It was nasty.  She gagged and spit on the floor, and he said, "Keep going.  You're not done."  *Id.*, at 131-133.

Afterwards, he told her to go to the bathroom, "spit it out, brush your teeth." *Id.*, at 133. She did so. She was afraid to tell anyone. She thought no one would believe her. He told her no one would believe her and "he would just get to come back in the house anyways." *Id.*, at 134. Approximately three weeks later, the same scenario occurred. *Id.*, at 134-135. The same incident took place probably over twenty times in her bedroom while she was in the seventh grade. *Id.*, at 135-136. He then wrote her a note, telling her that he was getting tired, it was getting old. He drew a picture of a stick person on her knees, telling her that that was what she would have to do now when she got into trouble. *Id.*, at 136. The first time he engaged in anal sex with B.D. took place on her mother's bed in her mother's room. *Id.*, at 139. He used Vasoline. *Id.*, at 140. She told him it hurt. He said, "It's either that or the strap." *Id.* When he was finished, he told her to go into the bathroom and sit on the toilet. *Id.*, at 141. This took place at her house on Pennsylvania while she was in seventh grade five to ten times. Id., at 141-142. He would send notes to B.D. through her five year old brother to tell her whether he wanted "an old" (her mouth) or "a new" (her "butt"). *Id.*, at 143. She would write him back asking please not to do this. *Id.*, at 143. Petitioner would have the other children go into their room to clean or, after they moved, downstairs into the play room, when these acts occurred so that they would not see. *Id.*, at 145-146. On one occasion, her sister may have seen something. When her mother came home, she asked B.D. why she was "acting retarded" and told her that if anything ever happened to her, she could tell her mother. *Id.*, at 147-148. B.D. told her mother on that occasion that she and petitioner were wrestling, and he just had his knee

33

in her back.  *Id.*, at 148.  She was afraid her mother would not believe her.  *Id.*  One incident

took place in May, or in the springtime, after they moved to a new house, on the day she

was supposed to bring candles home from school that she had been selling for an apparent

fund raiding activity.  *Id.*, at 149-151.  Her mother came home and he told her to run into

the bathroom where she put on her pants.  Her mother came up the steps, and he hurried

up and put on his clothes and ran down the stairs with his MP 3 player.  Her mother came

in and asked why she did not get the candles.  She told her mother they were late.  Her

mother asked her what was wrong, she said nothing.  Her mother again told her "if

anything happen you could tell me."  *Id.*, at 151.  B.D. denied anything had happened,

walked out of the bathroom and shut the door.  *Id.*[2]  On another occasion, the school office

told her that petitioner called the school saying she had to leave for a doctor's appointment.

*Id.*  She ran all the way home, "did the old," ran back to school, and told them, per

petitioner's instructions, that her doctor's appointment had been cancelled.  *Id.*  She lied to

her mother about the incident per petitioner's instructions because neighbors told her

mother they had seen her.  *Id.*, at 152.  Testimony from Debbie Zirilli, the clerk at the

Harding Middle School, corroborated that the date of this alleged incident was April 27,

---

[2] It is not clear whether this incident took place before, or after B.D.'s thirteenth birthday.  They moved into the new house after seventh grade ended, in the summer, and B.D. turned thirteen on July 26, 2004.  *Trial Transcript*, at 137-138.  However, defense counsel was free to cross examine B.D. on this issue.  Further, the trial court explicitly instructed the jury that, in order to enter a finding of guilt, they must find beyond a reasonable doubt, that petitioner engaged in sexual conduct with B.D. when she was less than thirteen years of age.  The verdict forms likewise contained this same element of the offense(s) charged.  *Trial Transcript,* at 516-519.

2004, while B.D. was in the seventh grade and twelve years old.  *See State v. West, supra*; *Trial Transcript*, at 269.  The last incident occurred in January.  *Id.*, at 153.  B.D. complied with petitioner's requests because she was afraid of him, and he would hit her with a belt. *Id.*, at 155-157.  She finally wrote her mother a letter telling her what had been going on. *Id.*, at 158-159.  The police came and said they could not do anything.  Petitioner came to the house  and started knocking and pounding on the door.  No one would let him in, so he went to the front of the house and busted the window by the door handle and unlocked the locks.  The police arrived, and he ran.  *Id.*, at 159.  Police had her write petitioner a letter in the hopes of obtaining evidence against him.  *Id.*, at 163-164.

In short, petitioner has failed to establish that the state appellate court's decision rejecting his claim of ineffective assistance of counsel is contrary to, or an unreasonable application of federal law, or based upon an unreasonable determination of the facts such that federal habeas corpus relief is warranted.  *See* 28 U.S.C. 2254(d), (e); *Williams v. Taylor, supra*.  Given the way in which the evidence was developed at trial, it is simply not unreasonable to conclude that counsel did not perform in an unconstitutionally ineffective manner by failing to raise this type of *Valentine* claim.  Petitioner likewise has failed to establish cause for his procedural default of claims one and two.  Petitioner does not indicate the specific nature of any evidence improperly submitted against him at trial. Further, as discussed by the state appellate court, it appears, in any event, that any evidence regarding alleged sexual abuse that took place after B.D.'s thirteenth birthday would have been admissible under Ohio rules of evidence.  *See State v. West, supra*.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." *Murray v. Carrier, supra*, 477 U.S. at 496. Upon review of the record, and especially the trial testimony cited above, this Court is not persuaded that such are the circumstances here.

## CLAIM THREE

In claim three, petitioner asserts that his sentence violates the Ex Post Facto and Due Process Clause. The state appellate court rejected this claim as follows:

> This court has conclusively determined in *State v. Palmer*, 7th Dist. No. 06-JE-20, 2007-Ohio-1572, appeal not allowed by 115 Ohio St.3d 1410, 2007-Ohio-4884, 873 N.E.2d 1315, that application of *Foster* does not violate the ex post facto clause or a defendant's due process of law. *Palmer* relied on our own precedent as well as on decisions from other Ohio appellate districts, including the Second, Third, Ninth, and Twelfth, all of which had reached similar conclusions. The reasoning is primarily two-fold. First, Ohio appellate courts are inferior in judicial authority to the Ohio Supreme Court. Therefore, they are bound by their decisions and are not in a position to declare one of their mandates as unconstitutional. Second, a criminal defendant is presumed to know that their actions are criminal if so defined by statute and the possible sentence they could face if convicted. The statutory range of punishment a criminal defendant faced before *Foster* is the same as they face after *Foster*.
>
> ***
>
> West argues that his resentencing counsel was ineffective for failing to raise the ex post facto, due process, and consecutive sentencing issues detailed in his first and second assignments of error. Because these arguments are meritless, counsel was not ineffective for failing to raise these arguments. In order for

> counsel to be ineffective, West must demonstrate counsel's performance was deficient and that deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. "Trial counsel's failure to raise meritless arguments does not prejudice the defense." *State v. Hogan,* 7th Dist. No. 06 MA 152, 2007-Ohio-3334, at ¶ 10.

*State v. West, supra,* 2008 WL 2586754.

Again, the factual findings of the state appellate court are presumed to be correct, and a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. §2254(d), (e).  Petitioner has failed to meet this standard here.

In *Hooks v. Sheets*, – F.3d –, 2010 WL 1655578 (6th Cir. April 27, 2010), the United States Court of Appeals for the Sixth Circuit rejected the same argument presented by petitioner herein, at least as it applies to imposition of consecutive terms of incarceration:

> The Ex Post Facto Clause prohibits a state from passing a law that (1) criminalizes an action done before the law was passed, which was innocent when done, (2) " 'aggravates a crime, or makes it greater than it was, when committed,' " (3) " 'changes the punishment' " to inflict greater punishment than the law provided when the crime was committed, or (4) " 'alters the legal rules of evidence' " so that less or different testimony is required than at the time the offense was committed. *Rogers v. Tennessee,* 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (quoting *Calder v. Bull,* 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798)). The Ex Post Facto Clause, however, provides by its terms that it is applicable only to acts of the Legislature,

and " 'does not of its own force apply to the Judicial Branch of government.' " *Id.* (quoting *Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)). Nevertheless, the "limitations on ex post facto judicial decisionmaking are inherent in the notion of due process." *Id.* Consequently, the principles of the Ex Post Facto Clause apply to the courts through the Due Process Clause. *See id.* at 457. Because these principles are viewed through the lens of due process in the judicial context, the constitutionality of judicial action turns on the traditional due process principles of "notice, foreseeability, and, in particular, the right to fair warning," rather than the specific prescriptions of the Ex Post Facto Clause. *Id.* at 458-59.

A state's statutory scheme does not violate the Sixth Amendment simply because it constrains the ability of courts to impose consecutive sentences to situations in which the court has found specific facts. *Oregon v. Ice,* --- U.S. ----, ---- - ----, 129 S.Ct. 711, 714-15, 172 L.Ed.2d 517 (2009). Instead, a state may allow courts unfettered discretion to impose consecutive sentences or it may limit that authority without violating the Sixth Amendment. *Id.* At the time Hooks committed his crimes, Ohio permitted the court to impose consecutive rather than concurrent sentences if it found particular facts, *see* ORC § 2929.14(E)(4), and explained its "reasons for imposing the consecutive sentences," ORC § 2929.19(B)(2)(c). The Ohio Supreme Court nevertheless determined that these statutory provisions violated *Blakely* because they allowed the imposition of longer sentences-consecutive sentences-based upon judicial factfinding. *Foster,* 845 N.E.2d at 491.

Regardless of the court's determination in *Foster,* the maximum sentence to which Hooks was constitutionally subject contemplated consecutive sentences. Hooks would have the court calculate his maximum sentence as being imposed concurrently based solely on the facts found by a jury at the time of sentencing, because he argues that this calculation is mandated by *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). However, *Apprendi* does not limit the calculation of Hooks's potential sentence to concurrent sentences when the judicial fact-finding here is allowed under *Ice* . Thus, Hooks was initially and constitutionally subject to

consecutive sentences according to the "guided discretion" of the court. *See Foster,* 845 N.E.2d at 495. Moreover, Hooks was always aware of the potential for consecutive sentences. On re-sentencing post- *Foster* he remained subject to consecutive sentences within the discretion of the court. Since Hooks was *always* subject to consecutive rather than concurrent sentences in the discretion of the trial court, his re-sentencing under *Foster* did not raise ex post facto or due process concerns. We need not reach the broader question of whether re-sentencing under *Foster* ever violates the Due Process or Ex Post Facto Clauses because *Foster's* application in Hooks's case does not do so.

*Id.* Further, petitioner's argument has been repeatedly rejected by state and federal courts.

As noted by the United States District Court for the Southern District of Ohio, Western

Division, in *Dickens v. Brunsman*, 2009 WL 3199066 (S.D. Ohio September 29, 2009),

Petitioner's claim that the retroactive application of the *Foster* remedy to correct constitutional infirmities in Ohio's sentencing statutes constitutes a violation of the Constitution's Ex Post Facto and Due Process Clauses has been thoroughly discussed and uniformly rejected by this Court and other federal district and state courts in Ohio. *See, e.g., Hooks v. Sheets*, No. 1:07cv520, 2008 WL 4533693, at *3-5, *13-19 (S.D. Ohio Oct. 3, 2008) (Beckwith, J.; Hogan, M.J.) (unpublished) (and cases cited therein); *see also Wright v. Warden,* Pickaway Corr. Inst., --- F.Supp.2d ----, No. 1:07cv1022, 2009 WL 1850170, at *1, *23-25 (S.D. Ohio June 25, 2009) (Barrett, J.; Hogan, M.J.) (to be published) (and cases cited and quoted therein); *Kelley v. Brunsman*, --- F.Supp.2d ----, No. 1:08cv71, 2009 WL 1617774, at *5-6, *17-18 (S.D. Ohio June 9, 2009) (Spiegel, J.; Hogan, M.J.) (to be published); *Smith v. Brunsman*, --- F.Supp.2d ----, No. 1:07cv878, 2009 WL 530113, at *1, *4-8 (S.D. Ohio Feb. 27, 2009) (Barrett, J.; Black, M.J.) (to be published) (noting that "both the federal district courts and Ohio courts have rejected ex post facto challenges to the Foster decision").FN8

FN8. *See also Rettig v. Jefferys,* 557 F.Supp.2d 830, 841 (N.D. Ohio 2008) (Polster, J.; McHargh, M.J.) (citing Ohio cases

"uniformly reject [ing] ex post facto challenges to the *Foster* decision"); *Smith v. Welch*, No. 3:08cv2917, 2009 WL 2167863, at *1-3, *13-16 (N.D. Ohio July 17, 2009) (Economus, J.; Vecchiarelli, M.J.) (unpublished); *Schaub v. Brunsman,* No. 1:08cv2522, 2009 WL 2143746 (N.D. Ohio July 16, 2009) (Boyko, J.; Perelman, M.J.) (unpublished); *Mason v. Brunsman*, No. 1:07cv1020, 2009 WL 2169035, at *8-9, *34-37 (S.D. Ohio July 16, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished); *Clagg v. Wolfe*, No. 2:08cv144, 2009 WL 1424427, at *1-6 (S.D. Ohio May 20, 2009) (Sargus, J.) (unpublished); *Pena v. Cooper*, No. 2:08cv195, 2009 WL 1324046, at *1, *16-19 (S.D. Ohio May 12, 2009) (Smith, J.; Abel, M.J.) (unpublished); *Newman v. Wilson*, No. 5:08cv483, 2009 WL 1212262, at *1, *11-12 (N.D. Ohio Apr. 30, 2009) (Oliver, J.; Perelman, M.J.) (unpublished) (and cases cited therein); *Trewartha v. Brunsman,* No. 2:07cv981, 2009 WL 614963, at *1, *10-13 (S.D. Ohio Mar. 5, 2009) (Holschuh, J.; Abel, M.J.) (unpublished); *Haning v. Wolfe*, No. 2:07cv1093, 2009 WL 541156, at *1, *3-5 (S.D. Ohio Feb. 27, 2009) (Watson, J.; Abel, M.J.) (unpublished) (and cases cited therein). *Cf. Turner v. Warden*, Noble Corr. Inst ., No. 1:08cv309, 2009 WL 866841, at *2, *9 (S.D. Ohio Mar. 31, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished) (although the court held that *Foster* did not apply to the petitioner's sentence, it noted that "both the federal courts and Ohio courts have rejected ex post facto challenges to the *Foster* decision"); *Collins v. Warden*, Chillicothe Corr. Inst., No. 3:06cv256, 2008 WL 728390, at *1, *8-9 (S.D. Ohio Mar. 17, 2008) (Rice, J.; Merz, M.J.) (unpublished) (holding that "[w]hile Petitioner's original sentence violated *Blakely*, his new sentence [under the *Booker* remedy adopted in *Foster* ] did not," and that "[n]othing in the United States Constitution calls such a sentence into question").

*Id*. This Court agrees with the reasoning of those courts.

Under the Ex Post Facto Clause of the United States Constitution, a state is prohibited from passing a law that (1) "makes an action done before the passing of the law, and which was innocent when done, criminal;" (2) "aggravates a crime, or makes it greater than it was, when committed;" (3) "changes the punishment, and inflicts a greater punishment,

40

than the law annexed to the crime, when committed;" and (4) "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender."

*Rogers v. Tennessee*, 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (quoting Calder v. Bull, 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798) (Chase, J.)); see also U.S. Constit. Art. I, § 10. As petitioner apparently concedes ( see Doc. 14, p. 11), Ex Post Facto Clause concerns are not triggered in the case-at-hand because "by its very text [the clause] applies only to a limitation on the powers of the legislature and not to judicial decisions." *McGhee v. Konteh*, No. 1:07cv1408, 2008 WL 320763, at *10 (N.D. Ohio Feb.1, 2008) (unpublished); see also Rogers, 532 U.S. at 456, 460 (refusing to extend the strictures of the Ex Post Facto Clause to judicial decisions "through the rubric of due process").

Nevertheless, the Fourteenth Amendment's Due Process Clause does limit ex post facto judicial decision-making. *Rogers,* 532 U .S. at 456. Although the Due Process Clause does not incorporate the specific prohibitions of the Ex Post Facto Clause, retroactive judicial decision-making must comport with "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Id.* at 459 (citing *Bouie v. City of Columbia*, 378 U.S. 347, 351, 352, 354-55, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *see also United States v. Barton*, 455 F.3d 649, 654 (6th Cir.) ("when addressing ex post facto-type due process concerns, questions of notice, foreseeability, and fair warning are paramount"), cert. denied, 549 U.S. 1087, 127 S.Ct. 748, 166 L.Ed.2d 579 (2006).

Here, petitioner is unable to prevail on any claim that he lacked sufficient notice or "fair warning," because *Blakely, Booker,* and *Foster* did not change the elements necessary to convict petitioner ... and petitioner was aware of the potential penalties he faced ... [B]oth before and after *Foster,* petitioner was on notice and thus had "fair warning" of the potential penalties he faced and of the trial court's discretion to impose those

41

penalties.

*Hooks v. Sheets*, 2008 WL 4533693 (S.D. Ohio October 3, 2008); *see also Trewartha v. Brunsman*, 2009 WL 614963 (S.D. Ohio March 5, 2009); *Smith v. Wilson*, 2008 WL 4758696 (N.D. Ohio October 29, 2008) (same). This same reasoning applies here. Petitioner faced the same penalty ranges in sentences for his convictions prior to and after *Foster*. In fact, the trial court in this case imposed the same sentence at petitioner's resentencing. The trial court's imposition of non-minimum consecutive terms after *Foster* did not violate the Due Process Clause or Ex Post Facto Clause.

Claim three is without merit.

## CLAIM FOUR

Petitioner also asserts in claim four that he was denied the effective assistance of counsel at re-sentencing because his attorney failed to object to his sentence as violating the Ex Post Facto and Due Process Clause. The state appellate court rejected this claim as follows:

> West argues that his resentencing counsel was ineffective for failing to raise the ex post facto, due process, and consecutive sentencing issues detailed in his first and second assignments of error. Because these arguments are meritless, counsel was not ineffective for failing to raise these arguments. In order for counsel to be ineffective, West must demonstrate counsel's performance was deficient and that deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. "Trial counsel's failure to raise meritless arguments does not prejudice the defense." *State v. Hogan*, 7th Dist. No. 06 MA 152, 2007-Ohio-3334, at ¶ 10.

Accordingly, West's ... assignment of error is without merit.

*State v. West, supra*, 2008 WL 2586754.

For the reasons set forth above, this Court is not persuaded that petitioner's sentence was unconstitutionally imposed.  Therefore, petitioner has failed to establish the ineffective assistance of counsel under the standard set forth in *Strickland* on this basis.

Claim four is without merit.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*,

474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

      The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp<br>
United States Magistrate Judge